## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BONNIE L. THOMPSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:08-cv-00297(RMC)** |
| ) | |
| **HINSON & COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## HINSON AND COMPANY'S MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION PENDING THE ARBITRATION PROCEEDING

Hinson and Company ("Hinson" or the "Company") hereby moves this Court, under Federal Rule of Civil Procedure 12(b)(1), to issue an order (1) compelling Plaintiff to submit her claims against Hinson to arbitration; and (2) staying this litigation pending the arbitration proceeding. In support of its Motion, Hinson has filed the accompanying Memorandum.

Wherefore Hinson contends that the Court should grant the Company's Motion and issue an order (1) compelling Plaintiff to submit her claims against Hinson to arbitration; and (2) staying this litigation pending the arbitration proceeding.

### LOCAL RULE 7(M) CERTIFICATION

Before filing this Motion, I attempted to reach the *pro se* Plaintiff by telephone, at the telephone number identified in the caption of her Complaint. I did so in a good faith effort to determine whether she opposes the relief sought herein.

No one answered the telephone.  So, I left a voicemail message in which I identified myself, summarized the reason for my call, and asked the *pro se* Plaintiff to return my call.  As of the time of this filing, however, she has not done so.

Therefore, I do not know her position regarding this Motion.

Respectfully submitted,

Henry Morris, Jr.
Arent Fox PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
Telephone:  (202) 857-6000
Facsimile:  (202) 857-6395

Attorneys for Hinson and Company

RPP/257121.3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BONNIE L. THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:08-cv-00297(RMC) |
| | ) | |
| **HINSON & COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## HINSON AND COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION PENDING THE ARBITRATION PROCEEDING

Hinson and Company ("Hinson" or the "Company") hired Plaintiff on June 5, 2006.  And it terminated her effective about 2 weeks later, during her probationary period, because her performance was unsatisfactory.

Plaintiff responded by suing Hinson under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act (the "ADEA").  But, Plaintiff executed an agreement with Hinson that requires her to submit all such claims to arbitration.  And arbitrating her claims under that agreement would require her to forego no substantive statuary rights.

Accordingly, the conclusion is ineluctable that an order compelling Plaintiff to submit her claims to arbitration, and staying this litigation pending the arbitration proceeding, is warranted.

**BACKGROUND**[1]

Hinson operates a showroom, in the District of Columbia, for interior decorators. (Andreacci Dec. ¶ 2.)[2]  On June 5, 2005, it hired Plaintiff as a sales trainee, subject to a 90-day probationary period.  (Andreacci Dec. ¶ 3.)

In consideration for her employment, Plaintiff executed an Arbitration Agreement ("Agreement") with Hinson -- (Andreacci Dec. ¶ 4) -- which contains several provisions apposite to this lawsuit.

First, the Agreement makes arbitration the exclusive means for resolving virtually all claims between the parties, including Title VII and ADEA claims:

> The parties to this Agreement agree to arbitrate any and all disputes, claims, or controversies of any nature ('claims') they may have against each other, including their current and former agents, owners, officers, directors, or employees, which arise[] from or is in any way related to the employment relationship between [Plaintiff] and [Hinson] or  the hiring of [Plaintiff] or the termination of employment.  Claims covered by this Agreement include, but are not limited to, claims of employment discrimination and harassment under Title VII of the Civil Rights Act, as amended, ...[and] the Age Discrimination in Employment Act. . . .

(Andreacci Dec. ¶ 3, Exhibit 1, at 38.)[3]

Second, the Agreement states that arbitration proceedings "shall be conducted by a neutral arbitrator in accordance with the Employment Dispute Resolution Rules issued by the American Arbitration Association ('AAA') [ and with the Employer's Grievance

---

[1]    To the extent that Hinson relies upon facts that Plaintiff asserts in her Complaint, the Company does so for the purposes of this Motion only.

[2]    Citations to John Andreacci's Declaration are denominated "Andreacci Dec. ¶ ___.  A copy of Mr. Andreacci's Declaration is submitted herewith as Attachment 1.

[3]    The Agreement does not require the parties to arbitrate workers' compensation, unemployment compensation, and unfair competition claims.  (Andreacci Dec. ¶ 3, at 38.)  Neither does it preclude Plaintiff from "filing a charge or from participating in any administrative investigation of a charge before any appropriate agency."  (Andreacci Dec. ¶ 3, at 38.)

and Arbitration Procedure Policy,] attached hereto and incorporated herein by reference." (Andreacci Dec. ¶ 3, Exhibit 1, at 38.)

Third, under the Agreement, Hinson must bear the arbitrator's fee and all AAA charges: "[The Company] will pay the arbitrator's fee for the proceeding as well as any room or other charges by AAA." (Andreacci Dec. ¶ 3, Exhibit 1, at 38.)

Fourth, the Agreement authorizes the arbitrator to award "any type of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to attorneys' fees and punitive damages when such damages and fees are available under the applicable statute and/or judicial authority." (Andreacci Dec. ¶ 3, Exhibit 1, at 39.)

Fifth, the law of the District of Columbia -- "the State in which [Plaintiff was] employed" - - governs the Agreement. (Andreacci Dec. ¶ 3, Exhibit 1, at 39.)

Plaintiff worked for Hinson for about 2 weeks, when the Company terminated her for unsatisfactory performance. (Cmplt. p.1; Andreacci Dec. ¶ 7.) This action ensued.

## II.    ARGUMENT

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, embodies the strong federal policy favoring arbitration agreements.

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* at § 2; *see Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); *Hobley v. Kentucky Fried Chicken, Inc.*, No. Civ.A. 04-0314 (RMC), Civ.A. 04-

-3-

0492 (RMC), 2004 WL 3257063, at * 2 (D.D.C. Oct. 26, 2004), *aff'd*, 168 Fed. Appx.

443 (D.C. Cir. 2005), *cert. denied*, 547 U.S. 1130 (2006).[4]

That policy extends to statutory discrimination claims, if the arbitration agreement

does not require the aggrieved employee to forego her substantive statutory rights. *See*

*Circuit City Stores v. Adams*, 532 U.S. 105, 123 (2001) ("The Court has been quite

specific in holding that arbitration agreements can be enforced under the FAA without

contravening the policies of congressional enactments giving employees specific

protection against discrimination prohibited by federal law."); *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory

claims may be the subject of an arbitration agreement, enforceable pursuant to the

[Federal Arbitration Act]."); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir.

2005) ("Statutory claims may be subject to agreements to arbitrate so long as the

agreement does not require the claimant to forgo substantive rights afforded under the

statute."); *Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1481 (D.C. Cir.

1977)("[A]n employer's agreement to arbitrate employment-related disputes may require

him to arbitrate statutory claims under the ADEA because '[b]y agreeing to arbitrate a

statutory claim, [an employee] does not forego the substantive rights afforded by the

statute; [he] only submits to their resolution in an arbitral, rather than judicial forum.'"

(*quoting Gilmer*, 500 U.S. at 26.)).

Moreover, as "a matter of federal policy, *any* doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24

(emphasis added); *see Hughes v. CACI, Inc.-Commercial*, 384 F. Supp. 2d 89, 95 (D.D.C.

---

[4]        A copy of *Hobley* is submitted herewith as Attachment 2.

2005) (same); *Qwest Communications Corp. v. Ansari*, C.A. No. 05-1836 (EGS), 2007 WL 172318, at * 12 (D.D.C. Jan. 23, 2007) (same)[5]; *Hobley*, No. Civ.A.. 04-0314 (RMC), Civ.A. 04-0492 (RMC), 2004 WL 3257063, at * 2 (same).

Here, there are no doubts.

Plaintiff signed the Agreement, signifying her consent to be bound by its terms. *Hughes*, 384 F. Supp. 2d at 96 ("[A] 'signature on a contract indicates 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation.'" (*quoting Emeronye v. CACI Int'l, Inc.,* 141 F. Supp. 2d. 82, 86 (D.D.C. 2001)). And, under the Agreement, arbitration is the *exclusive* means of resolving Title VII and ADEA claims.

Additionally, arbitration under the Agreement would require Plaintiff to forego none of her substantive statutory rights.

An arbitration agreement passes that test if it "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs *or* any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Cole*, 105 F.3d at 1482. The Agreement easily satisfies each factor.

As to arbitrator neutrality, the Agreement makes clear that the arbitrator must be a "neutral," selected under the American Arbitration Association's Employment Dispute Resolution Rules (the "Rules"). The Rules, in turn, contain comprehensive provisions to safeguard arbitrator neutrality. To that end, the Rules:

---

[5]     A copy of *Qwest Communications* is submitted herewith as Attachment 3.

- require that arbitrators have no personal or financial interest in the results of the proceedings over which they preside;
- mandate that, before accepting an appointment, arbitrators disclose all information that might be relevant to the AAA's neutrality standard; and,
- establish a procedure for parties to challenge arbitrator qualifications.

(AAA Employment Dispute Resolution Rule 12, 15, and 16, *available at http:/www. adr.org/sp.asp? id=32904*.)

Regarding discovery, the Rules authorize the arbitrator to "order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the nature of arbitration." *Id.* at Rule 9. That suffices under this Circuit's law. *See Cole*, 105 F.3d at 1480-82; *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp.2d 94, 103 (D.D.C. 2004), *aff'd*, 413 F.3d 77 (D.C. Cir. 2005) ("The court in *Cole* found that the discovery permitted under the AAA employment arbitration rules was sufficient.").

The Rules require arbitrators to issue written awards: "The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law." (AAA Employment Dispute Resolution Rule 39.)

The Agreement authorizes the arbitrator to award the full panoply of remedies available under applicable law: "The arbitrator shall have the power to award any type of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to attorneys' fees and punitive damages when such damages and fees are available under the applicable statute and/or judicial authority." (Andreacci Dec. ¶ 3, Exhibit 1, at 39.)

And, Plaintiff need bear no administrative costs nor any part of the arbitrator's fee or expense as a condition to arbitration. Rather, as the Agreement makes clear, Hinson must pay those sums. ." (Andreacci Dec. ¶ 3, Exhibit 1, at 38.)

## III.  CONCLUSION

In sum, there are no doubts. Plaintiff signed the Agreement. It requires her to submit her Title VII and ADEA claims to arbitration. And arbitrating those claims under the Agreement would effectively enable Plaintiff to vindicate her substantive statutory rights. So, this case belongs in Arbitration.

Therefore, the Court should grant the Company's Motion and issue an order (1) compelling Plaintiff to submit her claims to arbitration; and (2) staying this case pending the arbitration proceeding.

Respectfully submitted,

Henry Morris, Jr.
Arent Fox PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
Telephone:  (202) 857-6000
Facsimile:  (202) 857-6395

Attorneys for Hinson and Company

-7-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BONNIE L. THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:08-cv-00297(RMC) |
| | ) | |
| **HINSON & COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

**UPON CONSIDERATION** of Hinson and Company's ("Hinson") Motion to Compel Arbitration and to Stay Litigation Pending the Arbitration Proceeding, the opposition thereto, and the argument of Hinson's counsel and the pro se Plaintiff, it is hereby

**ORDERED** this ____ day of _____, 2008 that Hinson's Motion is hereby **GRANTED,** and it is further

**ORDERED** that, if Plaintiff wishes to pursue her Title VII and ADEA claims against Hinson, she shall submit them to arbitration in keeping with the parties' arbitration agreement, and it is further

**ORDERED** that this action is stayed pending the arbitration proceeding.

_____
United States District Court Judge

## CERTIFICATE OF SERVICE

I certify that on this 25th day of April, 2008, I caused to be delivered, by certified mail, postage prepaid and return receipt requested, a copy of the foregoing Hinson and Company's Motion To Compel Arbitration and to Stay Litigation Pending the Arbitration Proceeding and accompanying documents upon the following:

> Ms. Bonnie L. Thompson
> 2525 S Adams Street. Apt 206
> Arlington, Virginia  22206

Henry Morris, Jr.

# ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BONNIE L. THOMPSON,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )     Civil Action No.  1:08-cv-00297(RMC)
                                       )
HINSON & COMPANY,                      )
                                       )
            Defendant.                 )
                                       )

DECLARATION OF JOHN J. ANDREACCI

        I, John J. Andreacci, do hereby depose and state as follows:

1.      I am Hinson & Company's ("Hinson" or the "Company") Vice President and Chief

Operating Officer.

2.      Hinson operates a showroom, in the District of Columbia, for interior decorators.

3.      On June 5, 2005, the Company hired Bonnie L. Thompson ("Ms. Thompson") as a sales

trainee, subject to a 90-day probationary period.

4.      In consideration for her employment, Ms. Thompson executed an Arbitration Agreement

(the "Agreement") with Hinson.

5.      A true and correct copy of the Agreement is attached hereto as Exhibit 1.

6.      I am a custodian of Exhibit 1, which was prepared and kept in the regular course of

Hinson's business activities.

7.      Hinson terminated Ms. Thompson, for unsatisfactory performance, effective about 2

weeks after it hired her.

I have reviewed the foregoing Declaration, consisting of 7 numbered paragraphs, and declare, under penalty of perjury, that it is true and correct to the best of my knowledge, information, and belief.

_____
John J. Andreacci

Date: _____4/27/08_____

# EXHIBIT 1

# ARBITRATION AGREEMENT

This Arbitration Agreement ("Agreement") is made as of *June 13-06* (date) by and between *Bonnie E. Thomas* ("Employee") and Hinson and Company ("Employer" or "Company").

The parties to this Agreement agree to arbitrate any and all disputes, claims, or controversies of any nature ("claim") they may have against each other, including their current and former agents, owners, officers, directors, or employees, which arises from or is in any way related to the employment relationship between Employee and Employer or the hiring of the employee or the termination of employment. Claims covered by this Agreement include, but are not limited to, claims of employment discrimination and harassment under Title VII of the Civil Rights Act, as amended, the Pregnancy discrimination Act, the Age Discrimination in Employment Act, as amended, the Older Workers Benefit Protection Act, the Americans with Disabilities Act, 42 U.S.C. section 1981, the Employment Retirement Income Security Act, applicable state and local anti-discrimination laws, rules and regulations, breach of employment contract or the implied covenant of good faith and fair dealing, wrongful discharge, or tortious conduct (whether intentional or negligent) including defamation, misrepresentation, fraud, infliction of emotional distress, but excluding claims for workers' compensation benefits to remedy work-related injury or illness. THE PARTIES UNDERSTAND AND AGREE THAT THEY ARE WAIVING THEIR RIGHTS TO BRING SUCH CLAIMS TO COURT, INCLUDING THE RIGHT TO A JURY TRIAL.

The only claims excluded from final and binding arbitration shall be claims that Employee may have for workers' compensation or unemployment benefits. In addition, the parties agree that they shall have the right to seek judicial relief in the form of (1) injunctive and/or other equitable relief and (2) injunctive relief or other equitable relief for threatened or actual unfair competition, misappropriation, unauthorized use or disclosure of trade secrets or confidential information, or violation of the Confidentiality Agreement or any applicable non compete agreement.

The arbitration shall be conducted by a neutral arbitrator in accordance with the Employment Dispute Resolution Rules issued by the American Association (AAA) [and with the Employer's Grievance and Arbitration Procedure Policy,] attached hereto and incorporated herein by reference. The Employer will pay the arbitrator's fee for the proceeding, as well as any room or other charges by AAA. Either party may file pre-hearing motions directed at the legal sufficiency of a claim or defense equivalent to a demurrer or summary judgment prior to the arbitration hearing.

The decision or award of the arbitrator shall be final and binding upon the parties. The arbitrator shall have the power to award any type of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to attorneys' fees and punitive damages when such damages and fees are available under the applicable statute and/or judicial authority. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction. The parties agree that any relief or recovery to which they are entitled arising out of the hiring of the employee, employment relationship or cessation thereof shall be limited to that awarded by the arbitrator.

Nothing in this Agreement precludes Employee from filing a charge or from participating in an administrative investigation of a charge before any appropriate government agency. However, Employee understands and agrees that Employee cannot obtain any monetary relief or recovery from such a proceeding.

The parties agree to file any demand for arbitration within the time limit established by the applicable statute of limitations for the asserted claims or within one year of the conduct that forms the basis of the claim if no statutory limitation is applicable. Failure to demand arbitration within the prescribed time period shall result in waiver of said claims.

Neither the terms nor the conditions described in this Agreement are intended to create a contract of employment for a specific duration of time or to limit the circumstances under which the parties' employment relationship may be terminated. Since employment with the Employer is voluntarily entered into, Employee is free to resign at any time. Similarly, the Employer may terminate the employment relationship at any time, for any reason.

This Agreement shall be interpreted in accordance with the laws of the State in which Employee is employed. The terms of this Agreement shall not be orally modified. This Agreement can be modified only by a written document signed by the Chairman of the Employer and the Employee.

A court or other entity construing this Agreement should administer, modify, or interpret it to the extent and such manner as to render it enforceable. If any portion is found to be unenforceable, that portion shall fail while the remainder of this Agreement remains in full force and effect. If, for any reason, this Agreement is declared unenforceable and cannot be administered, interpreted, or modified to be enforceable, the parties agree to waive any right they may have to a jury trial with respect to any dispute or claim relating to employment, termination from employment, or any terms and conditions of employment with the Employer.

I understand that I would not be hired by the Employer if I did not sign this Agreement. I have signed this agreement in consideration of my employment by the Employer. I have been advised of my right to consult with counsel regarding this Agreement. I also understand that by entering into this agreement, I am waiving any right to a trial by jury.

EMPLOYEE

_Bonnie L. Thompson_
Signature

_June 13-06_
Date

_Bonnie L. Thompson_
Print Name

EMPLOYER

_Mary O Lane_
Signature

_6|13|06_
Date

_MARY O. LANE_
Print Name

_MANAGER_
Title

**ATTACHMENT 2**



Not Reported in F.Supp.2d                                                                  Page 1
Not Reported in F.Supp.2d, 2004 WL 3257063 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 3257063)**

**H**
Hobley v. Kentucky Fried Chicken, Inc.
D.D.C.,2004.
Only the Westlaw citation is currently available.
  United States District Court, District of Columbia.
       Rev. Earnest Lee HOBLEY, Plaintiff,
                        v.
  KENTUCKY FRIED CHICKEN, INC., Defendant.
    **No. Civ.A. 04-0314(RMC), Civ.A. 04-0492(RMC).**

                 Oct. 26, 2004.

     MEMORANDUM OPINION ON MOTION FOR
               RECONSIDERATION

COLLYER, J.
**\*1** Rev. Earnest Lee Hobley brought two lawsuits,
*pro se,* against KFR U.S. Properties, Inc. (sued as
Kentucky Fried Chicken, Inc.) ("KFC") alleging
fraud, wage-and-hour violations relating to his final
paycheck, and the common law tort of "false accus-
ation." [FN1]KFC removed the cases from Superior
Court and moved to dismiss the case. On August 3,
2004, the Court granted in part, and denied in part,
KFC's motion to dismiss based upon the arbitration
agreement signed by Rev. Hobley as a condition of
his employment. *Hobley v. Kentucky Fried Chick-
en, Inc.,* Nos. 04-0314, 04-0492, Memorandum
Opinion (D.D.C. August 3, 2004) (*"Hobley I"* ).
KFC moves for reconsideration of that part of the
Court's opinion denying its motion to dismiss.

         FN1. Rev. Hobley filed his first complaint
         on January 21, 2004 complaining of fraud
         and a violation of KFC's final paycheck
         policy. This complaint also alleged termin-
         ation due to "religious bias toward me be-
         ing an Ordained Baptist preacher" based
         on 42 U.S.C. § 2000e. When this com-
         plaint was removed to federal court, Rev.
         Hobley moved to remand to Superior
         Court and argued that he was not asserting

a claim under Title VII.

     Rev. Hobley filed a second complaint on
     February 24, 2004, alleging the common
     law tort of false accusation.

The issue on reconsideration is whether a claim of
false accusation for reporting an alleged theft by an
employee is subject to arbitration under an agree-
ment that applies to "any claims that arise between"
the parties, where the theft is reported after the em-
ployment relationship has been severed. The Court
finds that the claim is subject to arbitration because
it is a claim between the parties that arises out of
their employment relationship. As no justiciable
claims remain, Rev. Hobley's complaint will be dis-
missed.

     BACKGROUND FACTS AND PRIOR PRO-
                CEEDINGS [FN2]

         FN2. The facts are laid out in *Hobley I* and
         will be summarized here only as relevant
         to the remaining issue.

On May 27, 2001, Rev. Hobley applied for employ-
ment with KFC. At that time, he signed an applica-
tion form that included a provision entitled
"ARBITRATION OF EMPLOYEE RIGHTS." This
arbitration clause stated:

Because of the delay and expense of the court sys-
tems, KFC and I agree to use confidential binding
arbitration for any claims that arise between me and
KFC, its related companies, and/or their current or
former employees. Such claims would include any
concerning compensation, employment (including,
but not limited to, any claims concerning sexual
harassment), or termination of employment. Before
arbitration, I agree: (i) first, to present any such
claims in full written detail to KFC; (ii) next, to
complete any KFC internal review process; and (iii)
finally, to complete any external administrative

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 2
Not Reported in F.Supp.2d, 2004 WL 3257063 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 3257063)**

remedy (such as with the Equal Employment Opportunity Commission). In any arbitration, the then prevailing rules of the American Arbitration Association (and to the extent not inconsistent, the then prevailing rules of the Federal Arbitration Act) will apply.

*See* Motion to Enforce Arbitration Agreement and to Dismiss, Exh. A. Rev. Hobley initialed a second, nearly identical, provision when he was eventually hired as an Assistant Manager on June 6, 2001. *See id.*Exh. B.[FN3]

> FN3. This provision stated:

>> Because of, among other things, the delay and expense which result from the use of the court systems, KFC and I agree to use confidential binding arbitration for any claim that arise between me and KFC, its parent and affiliated corporations and/or any of their current or former officers, directors, agents, and employees. Such claims would include any claims concerning compensation, employment (including, but not limited to, any claims concerning sexual harassment), or termination of employment. I also agree, before using this arbitration process (i) first, to present any such claims in full written detail to the KFC Human Resources Department; (ii) next, to pursue to completion any KFC internal review process; and (iii) finally, to pursue to completion external administrative remedy (such as with the Equal Opportunity Commission). In any arbitration, the then prevailing rules of the American Arbitration Association (and, to the extent not inconsistent, the then prevailing rules of the Federal Arbitration Act) shall apply.

>> Motion to Enforce Arbitration Agreement and to Dismiss, Exh. B.

On July 31, 2001, Rev. Hobley began training for the position of Assistant Manager. One part of Rev. Hobley's training included instruction on KFC's Cash and Security Guidelines ("Guidelines"), for which he signed an "ACKNOWLEDGEMENT" [sic] that he had read and understood them. *See* KFC's Statement of Points and Authorities In Support of Its Motion for Reconsideration ("Motion"), Exh. 1.[FN4] The Guidelines detailed the required procedure for daily transport and bank deposit of cash receipts, and warned that any theft of funds will be criminally prosecuted. *Id.* ("It is the intent of the Company to criminally prosecute all cases where theft is involved.").

> FN4. The Acknowledgment included the statement, "I also understand that I will be subject to these guidelines in cases of cash losses or violations of guidelines ... and that a breach of the KFC RESTAURANT CASH AND SECURITY GUIDELINES may result in corrective action up to and including termination of employment."*Id.* (capitalized in original).

**\*2** Rev. Hobley was the Assistant Manager for the morning shift on February 7, 2003. Under the Guidelines, it was his responsibility to take the prior day's receipts out of the store's safe and deposit them at the bank. On February 8, 2003, Rev. Hobley resigned his employment after learning that he would be demoted for performance reasons. Thereafter, KFC discovered that no deposit had been made on the morning of February 7, 2003. On February 28, 2003, the General Manager of the restaurant reported to the D.C. Metropolitan Police Department ("MPD") that Rev. Hobley had stolen $1,589.12 from KFC-the day's receipts for February 7. An arrest warrant was issued, and Rev. Hobley was arrested at his home on June 13, 2003. By judgment entered on February 6, 2004, the Superior Court of the District of Columbia found Rev. Hobley not guilty.

In its initial decision on KFC's motion to enforce the arbitration agreement and dismiss, this Court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 3257063 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 3257063)**

found the wage-and-hour claim arbitrable, but denied KFC's motion to dismiss Rev. Hobley's false-accusation claim because the event on which it is based-the February 28, 2003, report to the po-lice-happened after his employment with KFC had been severed. While Rev. Hobley twice agreed to arbitrate "any claims that arise between [himself] and KFC,"*Hobley I* reasoned that the agreement ap-plied only to claims that arose during Rev. Hobley's employment. For this reason, his wage claim was referred to arbitration and his false-accusation claim was not. KFC subsequently moved for recon-sideration of that part of the Court's August 3, 2004 Order denying its motion to enforce the arbitration of Rev. Hobley's claim of false accusation.

## ANALYSIS

There is a strong policy favoring alternative means of dispute resolution, *Masurovsky v. Green,* 687 A.2d 198, 201 (D.C.1997), and any doubts concern-ing the scope of arbitrability will be resolved in fa-vor of arbitration. *Moses v. H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). Where an arbitration provision is "susceptible of an interpretation" that arbitration is required, a court must order arbitration. *Haynes v. Kuder,* 591 A.2d 1286, 1289 (D.C.1991).

Whether any particular claim is subject to arbitra-tion is a matter of the parties' agreement. *First Op-tions of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943-44 (1995).*See Bailey v. Fed. Nat. Morg. Ass'n,* 209 F.3d 740, 746 (D.C.Cir.2000) (courts look to the contract to determine whether the parties have consented to arbitrate). The party resisting arbitra-tion must prove that the claims at issue are unsuit-able for arbitration. *Nelson v. Insignia/Esg., Inc.,* 215 F.Supp.2d 143, 150 (D.D.C.2002).

The KFC arbitration clause requires that the parties "use confidential binding arbitration for any claim[s] that arise between [Hobley] and KFC ... in-clud [ing] any claims concerning compensation, employment (including, but not limited to, any

claims concerning sexual harassment), or termina-tion of employment."*See* Motion to Enforce Arbit-ration Agreement and to Dismiss, Exh. A. KFC re-ported Rev. Hobley to the MPD for allegedly steal-ing cash while he was an employee. The Guidelines, which were a term and condition of Rev. Hobley's job and which he agreed to follow, create explicit duties for managing cash receipts. The Guidelines also provide the remedy for theft: "It is the intent of the Company to criminally pro-secute all cases where theft is involved."Motion Exh. 1. A claim relating to a breach of these duties is one "concerning ... employment" and falls squarely within the scope of the arbitration agree-ment.[FN5]

> FN5. In *Hobley I,* this Court did not con-sider the Guidelines. Without the Guidelines, the Court found that Rev. Hob-ley's claim of false accusation was "not based on an event that had its genesis in something he did while a KFC employee."*Hobley I* at 6. Subsequent brief-ing included a copy of the Guidelines and clarified that Rev. Hobley initialed a second "acknowledgment" of the Guidelines when he was hired as Assistant Manager. Accordingly, this Court has con-sidered the Guidelines in reaching its de-cision on the motion for reconsideration.

**\*3** Rev. Hobley relies upon a distinction made by this Court in *Hobley I* that his false-accusation claim is not a claim "concerning ... employment" because the report to the MPD occurred after his employment ceased. Response to KFC's Motion for Reconsideration at 2.[FN6] While the timing of a tort is probative on the question of arbitrability, this Court is persuaded that it is not necessarily dispos-itive.

> FN6. Although *Hobley I* distinguished the criminal report as a singular, post-employment event not subject to arbitra-tion, its reasoning on arbitrability did not consider the Guidelines. *See Hobley I* at 6.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 3257063 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 3257063)**

As the Court now finds that disputes arising from the Guidelines are arbitrable, the fact that the criminal report occurred post-employment is less relevant.

Torts committed after employment ends may be arbitrable if the claims "aris[e] out of the employment or termination of employment" of a plaintiff. *Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d 1047, 1051-52 (2d Cir.1989) (alleged post-employment defamation concerned truth or falsity of events during employment and was arbitrable).*See also Aspero v. Shearson Am. Express, Inc.,* 768 F.2d 106, 109 (6th Cir.1985) (post-termination claim of defamation arbitrable because resolution depended on evaluation of work performance during employment); *Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163 (8th Cir.1984) (post-employment reports to brokerage agencies subject to arbitration since claims relied on handling of customer accounts during employment). Indeed, the determinative issue is not whether the tort occurred after the employment relationship had ceased. Rather, the "proper question is whether resolution of the claim depends upon evaluation of a party's performance ... during the time of the contractual relationship."*Aspero,* 768 F.2d at 109.

Rev. Hobley's claim of false accusation sounds in defamation or malicious prosecution. Defamation requires evidence that: 1) the defendant made a false and defamatory statement concerning the plaintiff; 2) that the defendant published the statement without privilege to a third party; 3) that the defendant's fault in publishing the statement amounted to at least negligence; and 4) either the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.*Carter v. Hahn,* 821 A.2d 890, 893 (D.C.2003) (claim of defamation brought for false accusation that lead to criminal arrest). A claim of malicious prosecution requires evidence that: 1) the original action was instituted maliciously; 2) without probable cause; and 3) was terminated in the plaintiff's favor. *Ammerman v.*

*Newman,* 384 A.2d 637,639 (D.C.1978).

In a defamation action, any determination that KFC negligently made a defamatory statement depends upon numerous facts that arise out of Rev. Hobley's employment relationship with KFC, including his duties under the Guidelines and his performance as Assistant Manager .[FN7]Further, proof of probable cause and malicious intent in a claim of malicious prosecution requires consideration of these same factual predicates. Accordingly, Rev. Hobley's false-accusation claim must be considered one that "arise[s] out of or relate[s] to" his former employment. *Nur v. KFC,* 142 F.Supp.2d 48 (D.D.C.2001). That the final act constituting the alleged tort-a criminal report to the MPD-was published after he severed his employment relationship is a distinction of little importance.

> FN7. In addition, whether a qualified privilege exists because "a statement about suspected wrongdoing is made in good faith to law enforcement authorities" involves similar consideration of employment-based facts. *Columbia First Bank v. Ferguson,* 665 A.2d 650, 655 (D.C.1995) (citations omitted).

**\*4** The Court grants the motion for reconsideration and rules that Rev. Hobley's false-accusation claim comes within the parties' agreement to arbitrate disputes. The case will be dismissed.

A separate order accompanies this memorandum opinion.

D.D.C.,2004.
Hobley v. Kentucky Fried Chicken, Inc.
Not Reported in F.Supp.2d, 2004 WL 3257063 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# ATTACHMENT 3



Slip Copy
Slip Copy, 2007 WL 172318 (D.D.C.)
(Cite as: Slip Copy, 2007 WL 172318)

**C**
Qwest Communications Corp. v. Ansari
D.D.C.,2007.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
QWEST COMMUNICATIONS CORPORATION,
Petitioner,
v.
Hamid ANSARI, et al., Respondents.
**Civil Action No. 05-1836 (EGS).**

Jan. 23, 2007.

Derral Schroder, Campo, CO, pro se.

### MEMORANDUM OPINION

EMMET G. SULLIVAN, United States District
Judge.

*1 Petitioner, Qwest Communications Corporation
("Qwest"), is the defendant in a lawsuit filed by re-
spondents, Hamid Ansari and Broadband Utility
Resources, L.P. ("BUR"), in the United States Dis-
trict Court for the District of Colorado. That lawsuit
is currently stayed pending a determination by this
Court as to the arbitrability of the claims in re-
spondents' Complaint and the outcome of any arbit-
ration proceeding. After careful consideration of
the petition, the response and reply thereto, and for
the reasons stated below, this Court concludes that
the parties entered into a valid and enforceable ar-
bitration agreement, and that the agreement encom-
passes all of the claims asserted in Ansari's and
BUR's Complaint. Accordingly, the parties are
ordered to arbitrate all claims in the Complaint.

### I. BACKGROUND

On June 28, 2001, BUR contracted with Qwest for
the lease of an Indefeasible Right of Use ("IRU") of
telecommunications network capacity. Compl. ¶¶ 2,
30, Ex. A to Pet. to Compel Arbitration. According
to respondents, during negotiations on the IRU
Agreement, Qwest misrepresented its intention to

purchase telecommunications equipment from An-
sari's then-employer Sonus, Compl. ¶¶ 10-63, and
Qwest was legally barred from providing the IRU
contemplated in the IRU Agreement. Compl. ¶¶
64-94.

On October 22, 2003, Ansari and BUR filed a Com-
plaint against Qwest in the United States District
Court for the District of Colorado, alleging fraud,
common law business torts, and violations of the
Federal Communications Act. In response to the
Complaint, Qwest moved to compel arbitration and
stay the proceedings in Colorado. The district court
concluded that it did not have power to compel ar-
bitration because the IRU Agreement designated
Washington, D.C. as the forum for any arbitration
of disputes or disagreements "arising between Qw-
est and the Customer in connection with" the
Agreement. IRU Agreement ¶ 20.1, Ex. 2 to Compl.
The Tenth Circuit affirmed the trial court's order
denying arbitration in Colorado. *See Ansari v. Qw-
est Communications Corp.,* 414 F.3d 1214, 1219-20
(10th Cir.2005) ("[W]here the parties agreed to ar-
bitrate in a particular forum[,] only a district court
in that forum has authority to compel arbitration
under § 4 [of the Federal Arbitration Act].").

### II. DISCUSSION

The Federal Arbitration Act ("FAA") provides that
an arbitration clause in a contract is "valid, irrevoc-
able, and enforceable, save upon such grounds as
exist at law or in equity for the revocation of any
contract."9 U.S.C. § 2. The question of whether a
claim is arbitrable is an issue for judicial determin-
ation. *AT & T Tech., Inc. v. Communications Work-
ers of Am.,* 475 U.S. 643, 649 (1986). A court is not
to rule on the merits of the underlying claims,
rather it must only determine whether the parties
have agreed to submit a particular grievance to ar-
bitration. *Id.*

The FAA establishes a strong federal policy in fa-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3 of 5

vor of arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)."[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."*AT & T Tech. v. CWA,* 475 U.S. at 650 (internal quotation marks and citation omitted). However, this Circuit has cautioned that, although courts are to be mindful of the federal policy in favor of arbitration, "it is [the court's] task nonetheless to determine what appears to be most consistent with the intent of the parties."*Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.,* 850 F.2d 756, 760-61 (D.C.Cir.1988). Ultimately, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."*AT & T Tech. v. CWA,* 475 U.S. at 648. In determining the intent of the parties, the Court is mindful that the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."*Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 91 (2000).

**\*2** The IRU Agreement entered into by Qwest and BUR provides that:

Any dispute or disagreement arising between Qwest and Customer in connection with this Agreement which is not settled to the mutual satisfaction of Qwest and Customer within thirty (30) days from the date that either party informs the other in writing that such dispute or disagreement exists, shall be settled by arbitration in Washington, D.C. in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect on the date that such notice is given....

IRU Agreement ¶ 20.1.

Respondents do not challenge Qwest's assertion that the dispute arising between BUR and Qwest is "in connection with" the IRU Agreement. Instead, respondents argue that the Petition to Compel Arbitration should be denied because the underlying IRU Agreement is void *ab initio.*The respondents contend that Qwest offered, drafted, and executed a contract that it knew or should have known was impossible or illegal to perform. Specifically, respondents allege that Qwest entered into a contract to provide BUR with interLATA services at a time when Qwest was prohibited by federal law from providing all the interLATA services promised in the contract.

The Supreme Court's recent opinion in *Buckeye Check Cashing, Inc. v. Cardegna,* 126 S.Ct. 1204 (2006), is directly on point and governs this case. In *Buckeye,* customers sued a check cashing business for charging usurious interest rates in violation of state law. *Id.* at 1207.Respondents argued that they should not be required to adhere to the arbitration provisions in the Deferred Deposit and Disclosure Agreement because the contract as a whole was rendered illegal and invalid by the usurious finance charge. *Id.* at 1208.In rejecting the respondents' arguments, the Court held that "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court."*Id.* at 1209.

In this case, BUR and Ansari challenge the validity of the IRU Agreement as a whole and do not challenge the arbitration clause. Therefore, their challenge must go to an arbitrator. *Id.* at 1210 ("[A] challenge to the validity of the contract as a whole, and not specifically the arbitration clause, must go to the arbitrator.").

Respondents argue that if the Court grants Qwest's Petition to Compel Arbitration, the petition should only be granted as to respondents' common law claims and not their claims under the Federal Communications Act. Respondents argue that their

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Communications Act claims may be brought only in federal district court or before the FCC and, therefore, are not subject to arbitration. They contend that the Communications Act claims should be referred back to the United States District Court for the District of Colorado, respondents' chosen venue. Respondents are incorrect as a matter of law.

**\*3** In determining whether statutory claims may be arbitrated, courts must first ask "whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."*Green Tree,* 531 U.S. at 90. In this case, the parties agreed to arbitrate any claims arising in connection with the IRU Agreement. There is no dispute that the Communications Act claims arise in connection with the IRU Agreement.

Respondents contend that Congress did not intend to allow arbitration of Communications Act claims. They rely on Section 207 of the Communications Act, which provides that persons "claiming to be damaged by any common carrier subject to the [Communications Act] may either make [a] complaint to the [FCC] ... or may bring suit ... in any district court of the United States of competent jurisdiction."47 U.S.C. § 207. Respondents also rely on the Ninth Circuit's decision in *AT & T Corp. v. Coeur d' Alene Tribe,* 295 F.3d 899, 905 (9th Cir.2002), finding that "[Section] 207 establishes concurrent jurisdiction in the FCC and federal district courts only, leaving no room for adjudication in any other forum-be it state, tribal or otherwise."FN1

> FN1. The Court agrees with petitioner that the Ninth Circuit's decision in *AT & T Corp. v. Coeur d' Alene Tribe* only stands for the proposition that claimants may bring their claims before the FCC or in federal district court, not in state or tribal courts. The opinion does not address arbitration and in no way suggests that parties are prohibited from arbitrating claims un-

der the Communications Act.

The party "seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."*Green Tree,* 531 U.S. at 92. Such an intention may be evinced by the text of the statute, its legislative history, or an "inherent conflict" between the arbitration and the statute's underlying purposes. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 483 (1989) (finding that a party must show that "Congress intended in a separate statute to preclude a waiver of judicial remedies, or that such a waiver of judicial remedies inherently conflicts with the underlying purposes of that other statute").

Respondents have not met their burden. The Supreme Court has repeatedly "recognized that federal statutory claims can be appropriately resolved through arbitration, and [has] enforced agreements to arbitrate that involve such claims."*Green Tree,* 531 U.S. at 89 (citing *Rodriguez de Quijas,* 490 U.S. 477 (Securities Act of 1933); *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220 (1987) (Securities Exchange Act of 1934 and RICO); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985) (Sherman Act)). This Court finds no reason to treat the Federal Communications Act differently than these other statutes. Section 207 of the Communications Act merely provides a grant of subject matter jurisdiction to district courts and the FCC. Nothing in Section 207 or anywhere else in the text or the legislative history of the Federal Communications Act suggests that Congress intended to prohibit arbitration of Communications Act claims.

## III. CONCLUSION

**\*4** For the foregoing reasons, the Court finds that Qwest entered into a valid and enforceable arbitration agreement with BUR, and that the arbitration agreement encompasses all of the claims asserted in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 172318 (D.D.C.)
**(Cite as: Slip Copy, 2007 WL 172318)**

respondents' Complaint, including the Federal
Communications Act claims. Accordingly, the
Court **GRANTS** Qwest's Petition to Compel Arbit-
ration. The parties are ordered to arbitrate all the
claims in respondents' Complaint in accordance
with the terms laid out in the arbitration clause of
the IRU Agreement. A separate Order accompanies
this Memorandum Opinion.

D.D.C.,2007.
Qwest Communications Corp. v. Ansari
Slip Copy, 2007 WL 172318 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.